**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIMBERLY BELTRAN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:21-cv-7454-RBK-MJS |
| Plaintiff, | (Document Filed Electronically) |
| v. | |
| SOS LIMITED, YANDAI WANG, and ERIC H. YAN, | **CLASS ACTION** |
| Defendants. | Motion Day: July 5, 2022 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND AUTHORIZING DISSEMINATION OF <u>NOTICE OF SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ....................................................................................3

    A.     Procedural History..............................................................................3

    B.     Settlement Negotiations .....................................................................4

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE
    SETTLEMENT.......................................................................................5

    A.     Standards for Preliminary Approval ...................................................5

    B.     Plaintiffs and Lead Counsel Have Adequately
        Represented the Settlement Class .......................................................7

    C.     The Settlement Was Negotiated at Arm's Length ...............................8

    D.     The Relief Provided to the Settlement Class is Adequate ...................9

        1.     The *Girsh* Factors Support Preliminary Approval.....................9

        2.     The Proposed Method of Distributing Relief is
            Effective ..................................................................................15

        3.     Plaintiffs' Counsel Will Seek Reasonable
            Attorneys' Fees, Reimbursement of Expenses, and
            Award to Plaintiffs ..................................................................15

        4.     The Parties Have Agreed to a Standard Side
            Agreement Regarding Opt-Outs ..............................................16

    E.     There Was No Preferential Treatment; The Plan is
        Designed to Treat Settlement Class Members Equally.......................16

IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE
    SETTLEMENT CLASS ..........................................................................17

    A.     Numerosity ........................................................................................18

i

B. Commonality ......................................................................19

C. Typicality...........................................................................20

D. Adequacy ...........................................................................21

    1. Adequacy of the Proposed Class Representatives ....................21

    2. Adequacy of the Proposed Class Counsel ...............................22

E. Predominance and Superiority ...........................................24

V. THE PROPOSED NOTICE TO SETTLEMENT CLASS
MEMBERS SATISFIES RULE 23(c)(2)(B) ................................................27

VI. PROPOSED SCHEDULE OF EVENTS .....................................................30

VII. CONCLUSION...........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
   No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)...................6

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................... 13, 19

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .................................................................14

*Baker v. SeaWorld Ent., Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020).......22

*Christine Asia Co. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)
   ................................................................................................ 12, 17

*Clark v. Bally's Park Place, Inc.*,
   298 F.R.D. 188 (D.N.J. 2014) ...........................................................19

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .................................................................4

*Fergus v. Immunomedics, Inc.*,
   No. 2:16-cv-03335-KSH-CLW (D.N.J.) ............................................17

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .................................................................7

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................12

*Hoxworth v. Blinder, Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992) ...........................................................15

iii

*Hull v. Global Digital Solutions, Inc., et al.*,
  Case No. 3:16-cv-05153 (D.N.J.) ...................................................................................22

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................22

*In re Akers Biosciences, Inc., Sec. Litig.*,
  Case No. 18-cv-10521 (D.N.J.) ......................................................................................22

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ........................................................................................15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...........................................................................................10

*In re Charles Schwab Corp. Sec. Litig.*,
  No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ...............18

*In re China Sunergy Sec. Litig.*,
  No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............10

*In re Cigna Corp Sec. Litig.*,
  No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006)....................14

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013)....................................................................................12

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) ............................................................................... 14, 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................................................16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)..................9

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ...............................................................................7, 15

iv

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004)........................................................................9

*In re Nat. Football League Players Concussion Inj. Litig.*,
   775 F.3d 570 (3d Cir. 2014) ..........................................................................5, 13

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) .................. 4, 8, 9

*In re Ocean Power Techs., Inc., Sec. Litig.*,
   No. 14-3799 (FLW) (LHG), 2016 WL 7638464 (D.N.J. June 7, 2016) .............12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014)..................................................................12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .......................................................................... 16, 22

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997)...................................................................... 10, 14

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) .....................7

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ................................................................................14

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   233 F.R.D. 421 (E.D. Pa. 2006) ..........................................................................15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..................................................................................4

*Jones v. Com. Bancorp, Inc.*,
   No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) .........................5, 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015)...............................................................17

*Lazy Oil Co. v. Wotco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................................................10

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...............................................................11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...........................................................................................22

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ..............................................................................15

*Ortiz v. Canopy Growth Corp., et al.*,
  No. 2:19-cv-20543-KM-ESK (D.N.J.).................................................................17

*Pepe v. Cocrystal Pharma, Inc., et al.*,
  Case No. 2:18-cv-14901 ................................................................................ 21, 22

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ...........................................................................................20

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
  No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .......8

*Richard Rupp and Rodrigo Leal v. Momo, Inc., et al.*,
  Case No. 1:19-cv-04433-GBD (S.D.N.Y.) .........................................................17

*Shapiro v. All. MMA, Inc.*,
  No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018)  16, 17

*Singleton v. First Student Mgmt. LLC*,
  No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ....................7

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003) ........................................................................... 19, 20

*Smith v. Suprema Specialties, Inc.*,
  No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007) .. 14, 19, 20

*Spanier, et al., v. Bayerische Motoren Werke Aktiengesellschaft, et al.*,
   Case No. 2:20-cv-15081-CCC-AME (D.N.J.) ............................................... 21, 22

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .................................................................14

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................15

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ..........................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................15

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002) ...............................................................19

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016).......8, 17

## Statutes

15 U.S.C. § 78u-4................................................................................ 12, 21, 22

## Rules

Fed. R. Civ. P. 23 ..................................................................................... passim

## Other Authorities

7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002).4

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at
   528 (1986)..........................................................................................19

Manual for Complex Litigation § 21.632 (4th ed. 2004) ...........................................5

Lead Plaintiffs William Rodgers ("Rodgers") and Shawn Ho ("Ho" and with Rodgers, "Plaintiffs") respectfully submit this memorandum in support of their unopposed Motion For Entry of Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement.[1] Plaintiffs also request that the Court schedule a final approval hearing ("Settlement Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds ("Plan"), and the request for attorneys' fees, reimbursement of expenses, and Award to Plaintiffs.

## I.   INTRODUCTION

The Parties have reached a settlement to resolve this putative securities class action for $5,000,000 ("Settlement"). The Settlement was reached after hard-fought negotiations overseen by Hon. Jose L. Linares (ret.) serving as mediator. Plaintiffs now seek preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Instead, the Court need only determine whether the Settlement is *approvable* - in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Settlement Class, soliciting claims on, objections to, and exclusions

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement dated May 20, 2022, filed concurrently herewith ("Stipulation").

from the Settlement. With the Settlement Class Members' reactions in hand, the Court will determine at the Settlement Hearing whether to grant final approval of the Settlement.

Securities class actions are typically complex, but this is a precarious case as Defendants are based in China, where U.S. judgments are generally not enforceable. Additionally, while defendants in securities class actions are typically covered by insurance policies that pay for, among other things, settlements and judgments, there was no applicable insurance coverage here. Indeed, without a settlement, there was the real possibility that Plaintiffs end up with nothing after years of expensive litigation. Thus, this $5 million cash Settlement, the result of a mediator's proposal by Judge Linares and which recovers approximately 6.5% of what Plaintiffs contend are the $76 million in *maximum* damages *potentially provable*, is a favorable outcome for the Settlement Class. A recovery in the range of 6.5% is well within the range of recoveries that courts have found fair, reasonable, and adequate.

The Court must also preliminarily certify a settlement class to allow notice to be distributed to the Settlement Class. Securities class actions are particularly well-suited for class treatment, especially for settlement purposes, and this case is no different. The Court should make a preliminary determination that class treatment is appropriate, which will allow for the dissemination of notice to the Settlement Class. The Court need not decide at this stage whether to finally certify a settlement class.

2

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the specific proposed documents that Plaintiffs will use to communicate notice – the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, "Notice"). Proposed versions of the various forms of the Notice are attached respectively as Exhibits A-1, A-3, and A-4 to the Stipulation.[2] The Notice Plan and the Notice each closely track the forms and methods routinely used to communicate notice in securities class actions, and each satisfy Fed. R. Civ. P. 23, including its recent amendments. For these reasons, the Court should approve the Notice Plan and Notice.

## II.     BACKGROUND

### A.     Procedural History

This Action began on March 30, 2021, when Kimberly Beltran filed a putative securities fraud class action complaint in this Court against SOS Limited ("SOS" or the "Company"), Yandai Wang, and Eric H. Yan (collectively, "Defendants") alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Dkt. No. 1).

---

[2] Exhibit A-2 to the Stipulation is the Proof of Claim and Release Form ("Claim Form").

On June 1, 2021, Rodgers and Ho separately moved for appointment as lead plaintiff and for their respective counsel, The Rosen Law Firm, P.A. ("Rosen Law") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), to be approved as lead counsel pursuant to the Exchange Act and the Private Securities Reform Litigation Act of 1995 ("PLSRA") (Dkt. Nos. 5, 6). Upon reviewing their motions, and additional competing motions, Rodgers and Ho filed a letter and stipulation requesting that the Court appoint: Rodgers and Ho as Co-Lead Plaintiffs; Rosen Law and Hagens Berman as Co-Lead Counsel; and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Liaison Counsel (Dkt. No. 12). On November 2, 2021, the Court granted Rodgers' and Ho's stipulation (Dkt. No. 16).

Pursuant to this Court's schedule, Plaintiffs were to file an amended complaint, or stand on the initial complaint, on or before February 18, 2022 (Dkt. No. 29). As the Parties decided to engage in settlement discussions, they requested that the deadline for an amended complaint be continued until April 4, 2022 (Dkt. No. 35), which the Court granted (Dkt. No. 36). The Parties requested another extension of the deadlines, notifying the Court that they remain engaged in settlement negotiations with the assistance of Judge Linares (Dkt. No. 39). The Court granted the Parties' stipulation, further continuing the deadlines (Dkt. No. 40).

### B.    Settlement Negotiations

In early 2022, the Parties began to discuss potential, early resolution of the

case and engaged Judge Linares in February 2022 to serve as a mediator. The initial mediation was held on March 2, 2022. Before the mediation session, the Parties exchanged detailed mediation statements, outlining their positions on, among other things, liability, and damages. A settlement was not reached during this initial session, but negotiations continued with Judge Linares' assistance. On April 25, 2022, after several weeks of hard-fought negotiations, the Parties accepted Judge Linares' mediator's proposal to settle the action for $5 million. The Parties executed a term sheet on April 28, 2022. The Parties then filed a Notice of Settlement to inform the Court of the Parties' agreement in principle and requested that all deadlines and proceedings be stayed until June 24, 2022, by which date Plaintiffs would move for preliminary approval of the Settlement (Dkt. No. 41).

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Standards for Preliminary Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. This is particularly true for class actions involving complex litigation and securities matters. 7 Conte & Newberg, *Newberg on Class*

*Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more"); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("Securities class action litigation is  'notably difficult and notoriously uncertain'")).[3]

Settlement of this putative class action requires the Court's approval. Fed. R. Civ. P. 23(e). Courts typically conduct a preliminary assessment of the settlement before directing notice, a practice endorsed by the Third Circuit. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570 (3d Cir. 2014) ("*NFL Players*") (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)); *see also* 4 H. Newberg & A. Conte, *Newberg on Class Action* (4th ed. 2002), at ¶ 11.25, p. 38. "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Com. Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at \*2 (D.N.J. July 16, 2007);

Under Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

---

[3] Internal citations and quotations are omitted and emphasis is added unless otherwise indicated.

(2)    *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other

## B.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs have diligently prosecuted this Action on the Settlement Class's behalf. By the time the Parties entered into mediation, Plaintiffs had thoroughly investigated the facts by, among other things: (a) reviewing publicly available information regarding SOS, including regulatory filings, press releases, online

7

discussions forums, and media reports; (b) retaining a private investigator to identify and interview relevant witnesses and conduct site visits; (c) engaging a financial expert to analyze damages. Plaintiffs then prepared a detailed mediation submission and engaged in extensive and hard-fought settlement discussions with Defendants, zealously represented by experienced counsel from Faegre Drinker Biddle & Reath LLP.

### C.    The Settlement Was Negotiated at Arm's Length

The Settlement results from Judge Linares' mediator's proposal, provided to the Parties after an exchange of detailed mediation statements, a full-day mediation session, and continued settlement negotiations assisted by Judge Linares. Courts apply an initial presumption of fairness if the proposed settlement was reached through arm's length negotiation, as it was here. *Jones*, 2007 WL 2085357, at *2 (quoting Manual for Complex Litigation, Third Ed., § 30.42 (1995)). Indeed, "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (internal quotation omitted). Here, the settlement negotiations were overseen by Judge Linares, who served as Chief Judge for the District of New Jersey as recently as 2019. *See, e.g., In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL

8

9447623, at *17 (D.N.J. Dec. 9, 2008) (settlement negotiations were arm's-length when conducted over period of months by retired district judge as mediator).

### D.      The Relief Provided to the Settlement Class is Adequate

### 1.      The *Girsh* Factors Support Preliminary Approval

In determining whether to grant final approval of class action settlements, courts in the Third Circuit consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval factors also help guide a court's preliminary assessments of class action settlements. *Id.*

The first *Girsh* factor, the complexity, expense, and likely duration of the litigation, supports approval of the Settlement. "Large class actions alleging securities fraud" are "inherently complicated." *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000); *Royal Dutch/Shell*, 2008 WL 9447623, at *17

("Federal securities class actions by definition involve complicated issues of law and fact."). If this litigation were to continue, Plaintiffs would have to retain experts to opine on several topics such as on market efficiency, loss causation, and damages. But not only is this case complex due to its nature of being a securities class action, the fact that each of the Defendants, and likely most if not all witnesses, are in China adds another layer of complexity. For example, Plaintiffs would face significant obstacles conducting discovery against Chinese Defendants and witnesses, as obtaining evidence through the Hague Convention and letters rogatory are "cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Marshalling and obtaining evidence from China is challenging, as the Chinese government has imposed restrictions against the production of evidence and testimony to parties abroad. There is thus no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Moreover, any documents produced will likely be in Chinese, requiring translation or the retention of bilingual attorneys to facilitate document review. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

The third factor, the stage of the proceedings, also supports approval.[4] While discovery was stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "[c]ourts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *Ocean Power,* 2016 WL 6778218, at *17 (citing cases); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *13 (D.N.J. Nov. 10, 2016) (same).

At the time of settlement, Plaintiffs had extensive knowledge of the strengths and weaknesses of their case. Plaintiffs conducted a thorough investigation that included, among other things, reviewing SOS's public filings and press releases, researching, and reviewing news reports and online discussions forums concerning SOS, including those in the Chinese media. Plaintiffs also retained a private investigator in China to identify and interview relevant witnesses. Additionally, Plaintiffs consulted with an economics expert over the range of provable damages. Moreover, the exchange of mediation statements was informative, giving Plaintiffs a preview of the arguments that Defendants would raise if litigation were to continue. These steps provided Plaintiffs with a clear and realistic understanding of the merits of the Action as they entered settlement negotiations.

---

[4] Before notice of a settlement is disseminated, it is not possible to gauge the reaction of the class (the second *Girsh* factor). Plaintiffs, however, support the Settlement.

11

The fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, establishing damages, and maintaining the class action through the trial – also support approval. While the amended complaint had not yet been filed at the time the Parties reached the Settlement, Plaintiffs believe their claims to be meritorious. Plaintiffs, however, recognize that Defendants have compelling arguments concerning liability, including arguments against falsity and scienter. Plaintiffs might not be able to defeat Defendants' anticipated motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been very difficult" and based on risks and contingencies, settlement is reasonable in light of risks involved in establishing liability); *Ocean Power,* 2016 WL 6778218, at *19-20 (recognizing the difficulty of establishing liability in securities class action and the added risk of establishing damages); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *8 (S.D.N.Y. Dec. 19, 2014) ("Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.").

Plaintiffs also face hurdles in obtaining class certification for litigation purposes, as Defendants would almost certainly argue that the market for the SOS shares at issue was not efficient. Additionally, Defendants would contest that Plaintiffs suffered damages. Indeed, in securities class actions the issue of damages

12

often turns into a "battle of the experts" with no guarantee who will prevail. A "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts." *In re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3d Cir. 1998). The Settlement provides a favorable and immediate result for the Settlement Class while avoiding significant risks of establishing liability and damages.

The seventh, eighth, and ninth *Girsh* factors – the ability of the defendants to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and considering all the attendant risks of litigation – also support approval. The Settlement is a highly favorable result. Typically, an insurer funds some, if not all, of securities class action settlements. Here, however, Defendants do not have any applicable insurance. Defendants are also in China and it is believed that most, if not all, of Defendants' assets are in China. China does not typically recognize U.S. judgments. Therefore, even if Plaintiffs were to obtain a judgment, it is uncertain whether Plaintiffs could collect any of it.

Despite these serious limitations, the proposed Settlement recovers $5 million for the Settlement Class, returning approximately 6.5% of Plaintiffs' ***best-case*** scenario damages. Even without the additional hurdles, the Settlement compares

13

favorably to settlements in similar cases. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

Indeed, according to Cornerstone Research, from 2012 to 2020 securities class actions under the Exchange Act alleging between $75 million and $149 million settled for a median of 5.8% of damages.[5] Accordingly, this Settlement, which recovers approximately 6.5% of what Plaintiffs calculate to be maximum damages of $76 million against Chinese Defendants with no applicable insurance coverage, compares favorably to settlements in similar securities class actions.

---

[5] *See* Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis,* available at: https://securities.stanford.edu/research-reports/1996-2021/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

14

### 2. The Proposed Method of Distributing Relief is Effective

As demonstrated below in Section V, the proposed form and method of notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how the Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiffs' damages consultant.

### 3. Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As outlined in the proposed Notice, Plaintiffs' Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount and recover litigation expenses in an amount not to exceed $33,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). Further, as explained in the proposed Notice, Plaintiffs intend to request an amount not to exceed $10,000 in total pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class.

15

### 4.    The Parties Have Agreed to a Standard Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement that provides Defendants with the option to terminate the Settlement if the number of opt-outs reach a certain confidential threshold. Stipulation ¶10.3. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt-out solely to leverage the threshold to exact an individual settlement. *See Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("[t]his type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### E.    There Was No Preferential Treatment; The Plan is Designed to Treat Settlement Class Members Equally

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat

16

Plaintiffs or any other Settlement Class Member preferentially. *See In re Ocean Power Techs., Inc., Sec. Litig.*, No. 14-3799 (FLW) (LHG), 2016 WL 7638464, at *1 (D.N.J. June 7, 2016). The Long Notice sets out the Plan, which explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Settlement Class Member will receive the same per-share amount based on when they purchased or sold their SOS ADSs. Plaintiffs and all other Settlement Class Members will receive their payments under the same formula.

## IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

This Court should preliminarily certify the proposed Settlement Class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *NFL Players*, 775 F.3d at 574. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that: (1) the class is so numerous that joinder of all members is

17

impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority"). Each requirement is satisfied.

### A.    Numerosity

The numerosity requirement is satisfied where a class is so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Prudential,* 962 F. Supp. at 510. Indeed, numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Although the exact number of class members is unknown, courts generally presume that the numerosity requirement has been satisfied "when a class action

involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (quoting *Sinay et al. v. Lepore & Assocs., et al.,* No. 99-2231, slip op., at 8 (D.N.J. Feb. 14, 2001)); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008) (same); *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *4 (D.N.J. Apr. 23, 2007) (in "a securities action, a court may infer that the numerosity requirement is met from allegations of the number of transactions during the relevant period, even if the number of class members is not precisely known.").

SOS ADSs were publicly traded on the New York Stock Exchange, with millions of shares trading during the Settlement Class Period. The numerosity requirement is easily satisfied here.

### B.    Commonality

Commonality does not require that all class members make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) (noting that "only one question of law or fact in common is necessary"). The common issue "must be of such a nature that it is capable of classwide resolution – which means that determining its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Commonality is satisfied where the plaintiffs allege a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in Defendants' public filings and statements. *Sullivan*, 667 F.3d at 336; *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002); *Ikon*, 194 F.R.D. at 176; *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). This test is easily met in securities class actions. *DVI*, 249 F.R.D. at 201 ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.").

Here, commonality is met because of common questions of law and fact about whether, among other things, false statements of material fact were made in SOS' SEC filings and public statements, whether the statements were made with scienter, and what is the measure of damages.

### C.    Typicality

If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154,

183–84 (3d Cir. 2001). "Factual differences will not render a claim atypical if the claim  arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*,  980 F.2d 912, 923 (3d Cir. 1992).

Here, Plaintiffs' claims are typical of those of the Settlement Class. Plaintiffs allege that they purchased SOS ADSs at prices artificially inflated by what Plaintiffs contend to be Defendants' false and misleading statements, and they were harmed when the truth emerged, and the artificial inflation dissipated. Plaintiffs' claims stand or fall with those of the Settlement Class. Thus, they are typical.

### D.    Adequacy

The adequacy requirement has traditionally entailed a two-pronged inquiry: the plaintiff's interests must be sufficiently aligned with the interests of the absentee class members, and the plaintiff's counsel must be qualified to represent the  class. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995). Both prongs of the adequacy requirement are satisfied.

#### 1.    Adequacy of the Proposed Class Representatives

A proposed class representative is "adequate" if their interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998); *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at \*5 (D.N.J. June 28, 2018). Plaintiffs, who

are the proposed class representatives, have no interests that are antagonistic to those of the proposed Settlement Class, and they are not subject to unique defenses. Plaintiffs have remained engaged throughout the litigation and settlement process, communicating regularly with counsel, and have dutifully represented the Settlement Class. As a result, Plaintiffs are adequate Class Representatives.

### 2. Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Shapiro*, 2018 WL 3158812, at *5.

Lead Counsel, Rosen Law and Hagens Berman, each has extensive experience prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including many in the District of New Jersey. *See* Dkt. Nos. 5-7, 6-7 (Lead Counsel firm resumes). Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See, e.g., Roka*, 2016 WL 6661336, at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Shapiro*,

22

2018 WL 3158812, at *5 (recognizing Rosen Law's successful prosecution of many securities class actions); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (["Rosen Law"] is 'highly qualified [and] experienced' in securities class actions"). Moreover, Rosen Law has extensive experience litigating against Chinese-based defendants and understands the intricacies inherent in litigating such actions. *See, e.g., Christine Asia Co., Ltd. v. Yun Ma, et al.,* Case No. 1:15-md-02631 (CM) (SDA) (S.D.N.Y); *Richard Rupp and Rodrigo Leal v. Momo, Inc., et al.,* Case No. 1:19-cv-04433-GBD (S.D.N.Y.). Hagens Berman is engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, recovering billions for investors (*see, e.g.,* Dkt No. 6-7 at p.p. 31-33) (Hagens Berman Firm Resume discussing securities litigation practice). Hagens Berman has litigated complex securities fraud actions in Districts around the Country, including this one. *See Fergus v. Immunomedics, Inc.*, No. 2:16-cv-03335-KSH-CLW (D.N.J.) (Hagens Berman acted as lead counsel in a securities case that reached settlement and is in the preliminary approval stage); *Ortiz v. Canopy Growth Corp., et al.*, No. 2:19-cv-20543-KM-ESK (D.N.J.) (appointing Hagens Berman and Rosen Law as Class Counsel and preliminarily approving settlement). Moreover, Hagens Berman has been recognized for its role in successfully prosecuting actions on behalf of investors. *See e.g., In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA,

2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (after Hagens Berman negotiated two settlements resulting in an 82.1% recovery by California class members in the *Schwab* case, the Honorable William Alsup commented, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . .").

The Settlement was reached only after Lead Counsel conducted a comprehensive investigation in which Lead Counsel, among other things, worked with a private investigator in China to interview witnesses and conduct site visits, and engaged an economic expert to assess the range of damages. Lead Counsel also thoroughly reviewed Defendants' public filings and news reports concerning SOS in English and Chinese. Lead Counsel's extensive investigation and their decades of experience litigating similar cases allowed them to formulate a theory of the case and present arguments during settlement discussions that ultimately persuaded Defendants to enter the Settlement.  Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E.    Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Plaintiffs seek to certify a class under Rule 23(b)(3). *Id.* To certify a class under Rule 23(b)(3), the Court must find that: "the questions of law or fact common to class

24

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

"The focus of the predominance inquiry is on liability, not damages." *Smith,* 2007 WL 1217980, at *9 (citing cases); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 200–01 (D.N.J. 2014) (the amount of damages may vary among the class members, but these calculations are "straightforward").

Class certification is appropriate when common questions are a significant aspect of a case and can be resolved in a single action. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Fed. R. Civ. P. 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd,* 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification[.]"). Here, for settlement purposes, common questions predominate in that Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Additionally, damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the

25

predominance requirement is "readily met." *Amchem Products, Inc.*, 521 U.S. at 625.

Factors relevant to finding superiority include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. Plaintiffs foresee no difficulties in managing this Settlement Class for settlement.

Class actions are vastly superior to individual actions with respect to securities fraud claims. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical  recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the  plaintiffs would have no realistic day in court if a class action were not available"); *Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."). Moreover, "class

26

actions are favored in the securities litigation context  because they are necessary to meaningfully enforce the securities laws." *Smith*, 2007 WL 1217980, at \*20.

Thus, a class action is the superior method of adjudication. Defendants do not oppose certification of the Settlement Class under Rule 23(b)(3) for settlement purposes. The Court should preliminarily determine that class treatment is appropriate to permit notice to the Settlement Class.

## V.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(c)(2)(B)

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including how objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a claim; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information to examine Court records. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center.[6]

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that the Settlement and Final Judgment will bind all those who do not exclude themselves. Furthermore, the

---

[6] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf

27

PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7). Additionally, pursuant to Rule 23(h)(1), the Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of up to $33,000, and an Award to Plaintiffs of up to $10,000, all to be paid from the Settlement Fund.

The proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by either: (a) emailing links to the location of the Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses[7] or

---

[7] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an example of an electronic method of notice. Providing electronic notice to class members in which an email address can be obtained will reduce administration costs and ultimately benefit the class. This Court and others in this District have permitted similar electronic notice. *See, e.g., Spanier, et al., v. Bayerische Motoren Werke Aktiengesellschaft, et al.,* Case No. 2:20-cv-15081-CCC-AME (D.N.J.) (Cecchi, J.) (Dkt. No. 49); (Dkt. No. 135); *Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J.) (McNulty, J.) (Dkt. No. 76); *In re Akers Biosciences, Inc., Sec. Litig.,* Case No. 18-cv-10521 (D.N.J.) (Dkt. No. 40) (Salas, J.); *Hull v. Global Digital Solutions, Inc., et al.,* Case No. 16-cv-5153 (D.N.J.) (Dkt. No. 65) (Wolfson, J.).

(b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail to Settlement Class Members who can be identified with reasonable effort. Also, after entry of the Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's website. Additionally, Summary Notice will be published electronically once in *GlobeNewswire* and printed in *Investor's Business Daily*.

The proposed Notice and Notice Plan are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *Spanier, et al., v. Bayerische Motoren Werke Aktiengesellschaft, et al.,* Case No. 2:20-cv-15081-CCC-AME (D.N.J.) (same); *Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J.) (Dkt. No. 76) (same); *Hull v. Global Digital Solutions, Inc., et al.,* Case No. 3:16-cv-05153 (D.N.J.) (Dkt. No. 65) (same).

29

The form and manner of providing Notice to the Settlement Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement." *Prudential Ins.*, 148 F.3d at 328.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the proposed Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Emailing links to Long Notice and Claim Form and/or mailing Postcard Notice; Creating website with Stipulation, Long Notice, and Claim Form | No later than 21 Business Days after the entry of the Preliminary Approval Order (¶¶15, 18) |
| Publication of the Summary Notice | No later than 21 Business Days after entry of the Preliminary Approval Order (¶19) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 calendar days before the Settlement Hearing. (¶32) |
| Submission deadline for requests for exclusion and for objections | No later than 21 calendar days before the Settlement Hearing (¶¶24, 28) |
| Submission deadline for Claim Forms | No later than 21 calendar days before the Settlement Hearing (¶22(a)) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 14 calendar days before the Settlement Hearing (¶33) |

| Event | Deadline for Compliance |
|-------|-------------------------|
| Dated for the Settlement Hearing | At least 120 days after entry of the Preliminary Approval Order |

The Court should schedule the Settlement Hearing for a date that is at least 120 calendar days after entering the Preliminary Approval Order, which will allow enough time for Lead Counsel to: (i) email the links to the Long Notice and Claim Form and/or mail the Postcard Notice; (ii) post the Stipulation, Preliminary Approval Order, Notice and Claim Form on the Claims Administrator's website; (iii) publish the Summary Notice; (iv) file a motion in support of final approval of the Settlement and the Plan; (v) file a motion for attorneys' fees, reimbursement of expenses, and Award to Plaintiffs; and (vi) file a reply in support of final approval. Additionally, holding the Settlement Hearing at least 120 days after entry of the Preliminary Approval Order will allow Settlement Class Members enough time to submit their Claim Forms, exclude themselves, or object to the Settlement.

## VII.    CONCLUSION

The Court need not determine at this stage whether the Settlement is fair, reasonable, and adequate, or whether class treatment is appropriate. Those determinations are for the final approval hearing. Rather, this motion asks the Court to commence the settlement process.

This Settlement results from extensive arm's length negotiation guided by an experienced mediator. Given the considerable risks of lesser or no recovery for

31

Settlement Class Members if the litigation continues, the Settlement is a fair, reasonable, and adequate result. The Court should grant preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate for the Action, approve the form and manner of notice, and set a date for the Settlement Hearing.

Dated: June 6, 2022                    Respectfully submitted,

*/s/ Laurence M. Rosen*
Laurence M. Rosen
**THE ROSEN LAW FIRM, PA**
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

Yu Shi (admitted *pro hac vice*)
**The ROSEN LAW FIRM, P.A.**
275 Madison Ave, 40th Floor
New York, NY 10016
Tel:  (212) 686-1060
Fax: (212) 202-38277
yshi@rosenlegal.com

*Co-Lead Counsel for Co-Lead Plaintiff*
*William Rodgers and the Class*

32

Reed R. Kathrein (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
reed@hbsslaw.com

*Co-Lead Counsel for Co-Lead Plaintiff Shawn Ho and the Class*

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel:  (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Co-Lead Plaintiffs and the Class*

33

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Laurence M. Rosen
Laurence M. Rosen