**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIMBERLY BELTRAN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:21-cv-7454-RBK-EAP |
| Plaintiff, | (Document Filed Electronically) |
| v. | |
| SOS LIMITED, YANDAI WANG, and ERIC H. YAN, | **CLASS ACTION** |
| Defendants. | |

**JOINT DECLARATION OF LAURENCE ROSEN AND REED R. KATHREIN IN SUPPORT OF: (I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>AWARD TO PLAINTIFFS</u>**

We, Laurence Rosen and Reed R. Kathrein, declare under penalty of perjury that the following is true and correct to the best of our knowledge.[1]

1.      I, Laurence Rosen, am an attorney duly licensed to practice law in New Jersey and before this Court. I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Co-Lead Counsel for Lead Plaintiffs William Rodgers and Shawn Ho ("Plaintiffs") and the Settlement Class in the Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I, Reed R. Kathrein, am a partner at Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), Co-Lead Counsel for Lead Plaintiffs William Rodgers and Shawn Ho and the Settlement Class in the Action.  I am admitted *pro hac vice* to this Court for all purposes in representing Lead Plaintiffs in the Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

3.      We submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. The purpose of this Declaration is to set forth the nature of the litigation and

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated May 20, 2022 (the "Stipulation") (ECF No. 43).

negotiations that led to the Settlement with Defendants SOS Limited, Yandai Wang, and Eric H. Yan (collectively, "Defendants", and with Plaintiffs, the "Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and award to Plaintiffs are reasonable and should be approved by the Court.

4.    The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $5 million in exchange for full releases of Plaintiffs' claims, and completely resolves the Action.

5.    After Plaintiffs moved for preliminary approval of the Settlement on June 6, 2022, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class Members (the "Preliminary Approval Order"). ECF No. 47.

6.    Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of one-third of the Settlement Amount (or $1,666,666.67, plus interest earned at the same rate as the Settlement Fund), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $31,361.55 and compensatory awards to Plaintiffs totaling $10,000, or $5,000 each.

7. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Declaration of Margery Craig Concerning: (A) CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusions and Objections ("Craig Decl.").

8. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

9. Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Declaration of Reed R. Kathrein on behalf of Hagens Berman Sobol Shapiro LLP Concerning Attorneys' Fees and Expenses ("Hagens Berman Fee Decl.").

10. Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the Declaration of James E. Cecchi on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. Concerning Attorneys' Fees and Expenses ("Carella Byrne Fee Decl." or "Liaison Counsel Fee Decl.").

11. Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume").

12. Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the firm resume of Hagens Berman Sobol Shapiro LLP ("Hagens Berman Firm Resume").

13. Attached as <u>Exhibit 7</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

- 3 -

**Procedural and Settlement Negotiation History**

14.     This Action commenced on March 30, 2021 when Kimberly Beltran filed a putative class action complaint in this Court asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against SOS Limited, Yandai Wang, and Eric H. Yan. ECF No. 1.

15.     On June 1, 2021, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), William Rodgers and Shawn Ho moved to be appointed Lead Plaintiff. ECF Nos. 5 and 6. On November 2, 2021, pursuant to Messrs. Rodgers and Ho's letter and stipulation (ECF No. 12), the Court appointed William Rodgers and Shawn Ho as Co-Lead Plaintiffs and approved their selection of Rosen Law and Hagens Berman as Co-Lead Counsel and approved Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as Liaison Counsel. ECF No. 16.

16.     Upon their appointment as Lead Plaintiff, Messrs. Rodgers and Ho, through Lead Counsel, further investigated the claims in this Action by, among other things, reviewing SOS's public filings, announcements, press releases, and earnings call transcripts; retaining and overseeing a private investigator in China to locate and interview former SOS employees and relevant third-party witnesses as well as perform site visits, and consulting with an economics expert to analyze the range of provable damages.

17.     In early 2022, as Plaintiffs were preparing to file their amended complaint based on their investigation, the Parties began to discuss a potential early resolution of the case and engaged Hon. Jose L. Linares (ret.) in February 2022 to serve as mediator. A full-day mediation was held on March 2, 2022. Before the mediation session, the Parties exchanged detailed mediation statements, explaining their positions and providing factual evidence on, among other things, liability, and damages. The mediation concluded without an agreement, but negotiations continued after the mediation with Judge Linares' assistance.

18.     These efforts paid off when, on April 25, 2022, after weeks of hard-fought post-mediation negotiations through Judge Linares, the Parties accepted Judge Linares' mediator's proposal to settle the action for $5 million. The Parties executed a term sheet on April 28, 2022.

19.     The Parties then filed a Notice of Settlement to inform the Court of the Parties' agreement in principle and requested that all deadlines and proceedings be stayed until June 24, 2022, by which date Plaintiffs would move for preliminary approval of the Settlement. ECF No. 41.

20.     The Parties worked diligently to formalize the Settlement, culminating in a comprehensive Stipulation (ECF No. 43).

21.    On June 6, 2022, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement (ECF No. 45), which the Court granted on July 20, 2022 (Preliminary Approval Order, ECF No. 47).

### Nature of the Allegations in the Complaint

22.    The Complaint alleges that, during the Class Period, Defendants made materially false and misleading statements regarding the Company's cryptocurrency mining business, operations, and compliance policies. Specifically, that the Complaint alleges that: (i) SOS had misrepresented the true nature, location, and/or existence of at least one of SOS's principal executive offices listed in its Securities and Exchange Commission ("SEC") filings; (ii) SOS was engaging in cryptocurrency mining business with undisclosed related parties and/or entities fabricated by SOS; and (iii) SOS had misrepresented the type and/or existence of the cryptocurrency mining rigs it claimed to have purchased.

23.    The Complaint alleges that investors suffered losses when the price of SOS's American Depositary Shares ("ADSs") fell by over 21%, or $1.27 per share, on February 26, 2021 after securities analysts Hindenburg Research and Culper Research released commentary, photographic evidence, and Twitter tweets on SOS, claiming that the Company was an intricate "pump and dump" scheme that used fake addresses, undisclosed related entities, and doctored photos of cryptocurrency mining rigs to create an illusion of success.

- 6 -

### Risks of Continued Litigation

24.    There were a number of unique aspects to this case that strongly weigh in favor of an early resolution. Indeed, as explained below, there was significant risk that Plaintiffs and the Settlement Class end up with nothing if litigation were to continue.

25.    First, SOS is a China-based company and substantially all of its assets are in China. Both of the Individual Defendants are Chinese nationals residing in China. Chinese courts typically do not enforce U.S. judgments. Thus, even if Plaintiffs were to litigate this case to a successful verdict and obtain a judgment, there is substantial risk that Plaintiffs might collect nothing. Second, Defendants have no insurance policies to fund a settlement. In the vast majority of securities class actions, settlements are funded by insurance policies.  Here, because there is no applicable insurance policy to fund a settlement, any recovery must be self-funded by Defendants – all of whom are in China and practically immune to U.S. judgments.

26.    Third, the Chinese government enacted several regulatory measures in 2021 that could adversely affect SOS's business, including banning crypto-mining and prohibiting cryptocurrency transactions. For a relatively new company like SOS that intended to become a major player in the crypto industry in China, these measures pose considerable risk to the Company's prospects. Thus, were litigation

to continue over several years, Plaintiffs face the increasing possibility that SOS might go out of business and not fund any settlement at all.

27. Moreover, were litigation to continue, Plaintiffs would file their amended complaint, and Defendants would file their motion to dismiss the amended complaint. In light of the PSLRA's heightened pleading standards, there is no guarantee that this Action would survive Defendants' anticipated motion to dismiss. Defendants had strong arguments against several elements of Plaintiffs' *prima facie* claim, which were shared with Plaintiffs on a confidential basis during the mediation process. Even if Plaintiffs were to defeat Defendants' anticipated motion to dismiss, Plaintiffs would also have to overcome Defendants inevitable motions for summary judgment, and then win at trial. Each of these steps are fraught with risks and uncertainties

28. Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

29. Had the Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to demonstrate that SOS ADSs traded on

efficient markets and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

**Complexity, Expense and Likely Duration of the Litigation**

30. Without a Settlement, Plaintiffs face protracted and expensive litigation—with unique discovery challenges posed by China-based Defendants—that could drag the Action on for years.

31. Even if Plaintiffs overcome Defendants' motion to dismiss (which, as discussed above, is by no means guaranteed), discovery would be highly complicated and impose substantial costs. Here, SOS is a China-based company. SOS's officers and executives are all believed to reside in China. As such, most – if not all – of the evidence is in China. Plaintiffs would need to overcome Defendants' inevitable arguments that certain documents are not available for production due to China's stringent "State Secrecy" and data privacy laws. Even if Plaintiffs manage to obtain documents, the vast majority of them are likely to be in Chinese, which would require Plaintiffs to translate them as well as hire bilingual staff attorneys to review them. Deposition of Chinese nationals would be difficult, as Plaintiffs would need to travel to Hong Kong to take depositions (China does not allow depositions on the Mainland), or if such is not possible due to COVID travel restrictions, seek the Chinese government's permission to conduct video depositions of Chinese

nationals in China. The Chinese government is unlikely to grant such a request. Third parties with relevant knowledge and/or documents are also likely to be located in China, and Plaintiffs would need letters rogatory to obtain evidence from relevant third parties. All this makes discovery especially protracted, expensive, and complicated.

32. Following discovery, Defendants would likely file motions for summary judgment. If Plaintiffs managed to defeat summary judgment, trial would be next, and whoever loses at trial would almost certainly appeal. This process could take years to play out.

33. Moreover, experts would be needed to opine on, at minimum, market efficiency, price impact, loss causation, and damages, adding substantially to Plaintiffs' litigation costs.

34. Indeed, securities class actions are inherently complex and expensive to litigate, and this one is even more so because of the unique challenges presented by China-based Defendants without applicable insurance coverage. Thus, the Settlement, which confers an immediate and guaranteed recovery and avoids the considerable risks and expenses of continued litigation, is in the best interest of the Settlement Class.

- 10 -

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

35.     Lead Counsel has extensive experience and a long track record of success representing investors in securities class actions in courts throughout the country, including in the District of New Jersey. *See* Exs. 5 and 6, Lead Counsel's Firm Resumes.

36.     Defendants were represented by capable and experienced counsel from Faegre Drinker Biddle & Reath, LLP, a respected law firm with considerable success and experience defending securities class actions.

37.     Additionally, the Parties engaged Judge Linares as mediator and the Settlement was the result of a mediator's proposal by Judge Linares. Judge Linares served approximately 17 years as a federal judge in this District, including serving as Chief Judge of the District of New Jersey, and has presided over numerous complex litigations such as this.

**The Plan of Allocation**

38.     The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Craig Decl. at Ex. B (Long Notice) at pp. 5-8. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation.

39.    Under the Plan of Allocation, a "Recognized Loss" amount will be calculated for all relevant transactions of SOS ADSs during the Settlement Class Period. In general, the Recognized Loss will be the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual price and the sales price, whichever is less. Accordingly, any SOS ADSs purchased during the Settlement Class Period that were not held over a corrective disclosure date will have no Recognized Loss because the level of alleged artificial inflation is the same on the date of purchase and on the date of sale.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

40.    In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund fairly and rationally among Settlement Class Members based on the losses they suffered on transactions in SOS ADSs that were attributable to the conduct alleged in the Complaint. No Settlement Class Member receives preferential treatment; the formula for calculating Recognized Loss in the Plan of Allocation is the same for all Settlement Class Members.

**The Reaction of the Settlement Class**

41.    To date, 205,006 potential Settlement Class Members have been sent notices of the Settlement. Craig Decl. at ¶9. This includes 77,828 Postcard Notices

- 12 -

mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, 125,855 potential Settlement Class Members who received a direct link to the Long Notice from their nominees, and 1,323 potential Settlement Class Members who received an email containing a link to the Notice and Claim from the Claims Administrator. *Id.* at ¶¶7-8.

42.     The deadline to object to, or request exclusion from, the Settlement is November 8, 2022. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement, the Plan of Allocation, Lead Counsel's request for fees and reimbursement of expenses, or the requested award to Plaintiffs. *Id.* at ¶15.

43.     The Claims Administrator received two invalid requests for exclusion. *Id.* at ¶14. The two requests are from individuals who did not provide the information required to show that they are member of the Settlement Class, and have not responded to the Claim's Administrator's follow-up inquiry for the required information. *Id.*  There have been no valid requests for exclusion.

44.     Should any objections or requests for exclusions be received after the date of this declaration, Plaintiffs will address them in Plaintiffs' reply in support of the instant motions.

**Lead Counsel's Fee and Expense Request is Justified**

45.    Lead Counsel, along with Liaison Counsel, have worked diligently to achieve the Settlement, expending a collective 631.75 hours to date for a total lodestar value of $440,852.50. *See* Ex. 2 (Rosen Law Fee Decl.) and Ex. 3 (Hagen Berman Fee Decl.) at ¶¶ 4-5; Ex. 4 (Carella Byrne Fee Decl.) at ¶¶ 2-3.[2] The lodestar multiplier for the requested fee is 3.78. The rates Lead and Liaison Counsel billed for their attorneys are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 7, Peer Firms Billing Rates.

46.    Lead and Liaison Counsel spent a total of $31,361.55 in unreimbursed expenses in connection with the prosecution of this Action,[3] which is less than the $33,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Neither Lead Counsel nor Liaison Counsel has received any compensation from this case during the litigation.

47.    From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would

---

[2] Comprised of: 243.35 hours by Rosen Law resulting in a lodestar of $190,370.00; 367.80 hours by Hagens Berman resulting in a lodestar of $235,587.50; and 20.6 hours by Carella Byrne resulting in a lodestar of $14,895.00.
[3] Comprised of: $15,620.34 incurred by Rosen Law; $15,716.71 by Hagens Berman; and $24.50 by Carella Byrne.

potentially require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

48.    Lead Counsel's work in this Action included, among other things: (a) moving for and securing Plaintiffs' appointment as Lead Plaintiffs; (b) conducting a thorough investigation, including: analyzing SEC filings, press releases, analyst reports, and other publicly-available records concerning SOS, retaining and overseeing a private investigator in China to locate and interview former SOS employees and relevant third parties as well as performing site visits, researching and analyzing sources in the Chinese media and Chinese regulatory filings; (c) researching potential arguments and counter-arguments concerning Defendants' anticipated motion to dismiss and in anticipation of settlement negotiations; (d) retaining and consulting with an economic expert concerning damages; (e) participating in a full day mediation with Judge Linares, which included the preparation and exchanging of detailed mediation statements; (f) engaging in additional, hard-fought negotiations in the weeks following the mediation, which ultimately resulted in Judge Linares' mediator's proposal that the Parties accepted;

and (g) drafting the comprehensive Stipulation and  papers in support of preliminary approval of the Settlement.

49.    Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its motions, preparing for and appearing at the Settlement Hearing scheduled for November 29, 2022, assisting Settlement Class Members with their claims, overseeing and supervising the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Award to Plaintiffs is Justified**

50.    Plaintiffs have devoted a substantial amount of time leading this Action on behalf of the Settlement Class.

51.    Throughout this litigation, Plaintiffs were available to Lead Counsel as needed and performed their duties with attentiveness and diligence. Plaintiffs: (1) volunteered to file a motion seeking appointment as Lead Plaintiff; (2) reviewed significant filings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; (4) gathered and produced information to Lead Counsel concerning their SOS investments; (5) communicated and corresponded with Lead Counsel in preparation for and during mediation and

settlement discussions; (6) evaluated and approved the Settlement; and (7) made themselves available to be deposed if needed, and to testify if there was a trial.

52.    Accordingly, Plaintiffs request a modest award in the amount of $10,000 in total (comprised of $5,000 each for Lead Plaintiffs William Rodgers and Shawn Ho) to compensate them for this time and as an incentive for representative plaintiffs to come forward in similar cases in the future.

We declare under penalty of perjury that the foregoing is true and correct. Executed on November 1, 2022.

*/s/  Laurence Rosen*                                        */s/  Reed R. Kathrein*
Laurence Rosen                                               Reed R. Kathrein

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen
Laurence M. Rosen

- 18 -