[ECF Nos. 49, 51]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **KIMBERLY BELTRAN, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOS LIMITED, et al.,**<br><br>**Defendants.** | **Civil No. 21-7454 (RBK/EAP)** |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter comes before the Court by way of Motions for Final Approval of a Proposed Class Action Settlement, ECF No. 49, and for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs, ECF No. 51, (the "Motions") filed by Plaintiffs Sean Ho and William Rodgers (the "Co-Lead Plaintiffs"). The Court has reviewed Plaintiffs' moving papers, ECF Nos. 50, 52, 55, including the Joint Declaration of Laurence Rosen, Esq. and Reed R. Kathrein, Esq. filed in support of the Motions ("Joint Decl."), ECF No. 53. The Court notes that no opposition to the Motions has been filed. For the reasons stated on the record at the settlement hearing on November 29, 2022, the reasons that follow, and for good cause shown, the Court respectfully recommends that the District Court grant Plaintiffs' Motions, approve the proposed Plan of Allocation, and grant final class certification for purposes of settlement.

## BACKGROUND AND PROCEDURAL HISTORY

This is a securities class action. Defendant SOS Limited ("SOS") is a publicly traded technology company incorporated in the Cayman Islands with principal executive offices in

Qingdao City, China.  Complaint ("Compl."), ECF No. 1, ¶ 15.  SOS has purportedly changed its business model multiple times since 2020.  *Id.* ¶ 2.  In January 2021, SOS claimed to have shifted its focus to cryptocurrency mining.[1]  *Id.*  Plaintiff alleges that SOS made materially false statements regarding (1) the location and existence of its principal executive offices; (2) agreements with other "fabricated" businesses; (3) the nature of crypto mining rigs SOS claims to have purchased; and (4) the contents of its public statements and SEC filings in general.  *Id.* ¶ 5.  Beginning on February 26, 2021, securities research companies reported that SOS was "an intricate 'pump and dump' scheme that used fake addresses" and fabricated photographs of the crypto mining rigs it claims to have purchased.  *Id.* ¶ 6.

On March 30, 2021, Plaintiff Kimberly Beltran filed this class action under the Securities and Exchange Act of 1934 against SOS and its executives, Yandai Wang and Dr. Eric H. Yan, (collectively, "Defendants") on behalf of all persons (the "Settlement Class") who purchased or acquired SOS stock during a class period extending from July 22, 2020, through February 26, 2021 (the "Class Period").  *Id.* ¶¶ 1, 16-17, 52, 62, 74.  On November 2, 2021, the Court appointed Shawn Ho and William Rodgers as Co-Lead Plaintiffs.  Order, ECF No. 16, ¶ 1.  In that same Order, the Court appointed Hagens Berman Sobol Shapiro LLP and The Rosen Law Firm, P.A. as Lead Counsel and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Liaison Counsel (collectively, "Class Counsel").  *Id.*

This case is still in early procedural stages.  As a result of repeated scheduling stipulations between the parties, *e.g.*, ECF No. 40, Plaintiffs have not yet filed a motion to certify the class,

---

[1]  Crypto mining is the process of using sophisticated computer hardware to solve complex calculations, which results in the creation of new cryptocurrency tokens. *See, e.g.*, Euny Hong, *How Does Bitcoin Mining Work?*, INVESTOPEDIA (May 5, 2022), https://www.investopedia.com/tech/how-does-bitcoin-mining-work/ (last visited Jan. 2, 2023).

and Defendants have not yet filed an answer or a dispositive motion.  However, the parties have engaged in extensive settlement negotiations with the assistance of the retired Hon. Jose L. Linares serving as a mediator.  Pls.' Mem., ECF No. 50 at 1.

On June 6, 2022, Plaintiffs filed a stipulated proposed settlement agreement (the "Settlement").  ECF No. 43.  Defendants agreed to pay a sum of $5,000,000, to be placed into an escrow account, for full and final satisfaction of the class's claims.  *Id*. at 13-14.  On July 20, 2022, the Hon. Robert B. Kugler granted Plaintiffs' motion for preliminary approval of the Settlement, subject to further consideration at a settlement hearing.  Order, ECF No. 47, ¶ 6.  This Order also preliminarily certified this case as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of settlement only.  *Id*. ¶ 3.  The Court found that the stipulated Settlement "resulted from good faith, arm's-length negotiations" and authorized the distribution of notice to the Settlement Class members.  *Id*. ¶¶ 6, 15.  The Court also appointed Strategic Claims Services as the Claims Administrator to supervise and administer the notice procedure and the processing of claims.  *Id*. ¶ 11.

On November 1, 2022, Plaintiffs filed motions for final approval of the class action Settlement, ECF No. 49, supplemented by a memorandum of law, ECF No. 50.  Plaintiffs also filed a motion for an award of attorneys' fees, totaling one-third of the Settlement amount, or $1,666,666.67, along with reimbursement of out-of-pocket litigation expenses of $31,361.55, plus an award of $5,000 to each of the two Co-Lead Plaintiffs as compensation for expenses and lost time.  ECF No. 51.  Plaintiffs supported this motion with a memorandum of law.  Plaintiffs' Memorandum of Law ("Pls.' Mem."), ECF No. 52.  In addition, Plaintiffs filed a joint declaration from their lead counsel, Laurence Rosen, Esq. and Reed R. Kathrein, Esq., describing how the

Settlement was reached, the contents of the Plan of Allocation,[2] and how notice was given to the class members.  Joint Decl., ECF No. 53.  On November 15, 2022, Plaintiffs supplemented their motion with a reply memorandum in further support of final approval of the class action Settlement.  Plaintiffs' Reply Memorandum ("Pls.' Reply Mem."), ECF No. 55.  Plaintiffs state that the Claims Administrator has sent a total of 205,006 notices to potential Settlement Class members by mail and email.  Supplemental Declaration of Margery Craig ("Supp. Craig Decl."), ECF No. 55-1, ¶ 3.  As of November 15, 2022, a total of 2,117 valid claims had been filed.  *Id.* ¶ 9; Pls.' Reply Mem., ECF No. 55 at 6.  Notably, no class members have filed objections to the proposed Settlement, and there have been no valid requests for exclusion from any class member. Supp. Craig Decl., ECF No. 55-1, ¶¶ 7-8; Pls.' Reply Mem., ECF No. 55 at 1.[3]

In their briefing, Plaintiffs ask the Court to find that the Settlement is fair, reasonable, and adequate by applying the *Girsh* and *Prudential* factors; to authorize the award of attorneys' fees, the reimbursement of litigation expenses, and the incentive awards for Co-Lead Plaintiffs; to approve the Plan of Allocation; and to grant final certification of the Settlement Class.

On November 29, 2022, the Court held a settlement hearing on final approval of the class action Settlement, the award of attorney's fees, and the Plan of Allocation.[4]  Counsel for Plaintiffs

---

[2]   The Plan of Allocation describes how the Settlement Fund will be distributed to Settlement Class members based on the losses each member suffered.  Joint Decl., ECF No. 53, ¶¶ 38-40.

[3]   The Claims Administrator received two requests for exclusion, but both were invalid because the requesters did not provide the required information to establish their membership in the Settlement Class, and the requesters failed to respond after the Claims Administrator informed them that, without such information, their requests were invalid.  Pls.' Reply Mem., ECF No. 55 at 5.

[4]   On November 29, 2022, Plaintiffs' Motions for Final Approval of the Class Action Settlement and for Attorneys' Fees were referred to the undersigned Magistrate Judge for a report and recommendation.  ECF No. 56.  The undersigned presided at the hearing.  Counsel was provided the opportunity to consent to Magistrate Judge jurisdiction, but Defendants raised concerns about a lack of complete notice.  *See* Hearing Tr. 2:19 to 3:14.  Defendant speculated that

and Defendants appeared at the hearing in support of approval.  Counsel for Plaintiffs reaffirmed

that class members had filed no objections to the Settlement or any valid attempts to opt out of the

class.  Transcript of Hearing, Nov. 29, 2022 ("Hearing Tr."), 4:9-19.  Also, counsel for Plaintiffs

described the Settlement amount as fair compared to the maximum potential class-wide damages

and in light of the difficulties of obtaining evidence and enforcing a judgment in this action because

Defendant lacks insurance, the assets are located in China, and enforcing a judgment in China is

"very, very difficult."  *Id*. at 5:4-23.  Counsel for Plaintiffs and Defendants agreed that the

Settlement was a "hard fought compromise" achieved "at arm's length."  *Id*. at 6:3-22.  No person

appeared at the settlement hearing to object to the Settlement.  *Id*. at 6:23-24.

## DISCUSSION

### I.    *Girsh* Factors

In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit adopted nine factors

set out by the Second Circuit to determine whether a proposed class action settlement is fair,

adequate, and reasonable.  The *Girsh* factors are: (1) the complexity, expense, and likely duration

of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and

the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability

of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* (quoting *City of*

---

absent class members may be considered parties under the Magistrates Act and may require notice
and the opportunity to object to Magistrate Judge jurisdiction.  *Id*.; *see also Dewey v. Volkswagen
Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (discussing magistrate judge jurisdiction in
class actions).  Because the parties do not consent, the District Judge will retain jurisdiction over
this case, and all findings made by the undersigned will serve as recommendations.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Plaintiffs argue that all nine *Girsh* factors militate towards approving the Settlement, Pls.' Mem., ECF No. 50 at 10, and the Court recommends a finding of the same.

### A.     The Complexity, Expense, and Likely Duration of the Litigation (1)

This is a securities fraud case, which are "notably complex, lengthy, and expensive cases to litigate."  *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).  If this case proceeds, it would have much farther to go, potentially involving motions to dismiss, discovery, depositions, summary judgment, pre-trial motions, trial, and post-trial appeals.  As such, if litigation continued, and if Plaintiffs recovered at all, they likely would not recover for many years.  *Shapiro v. JPMorgan Chase & Co.*, No. 11-8331, 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014).  In contrast, settlement is immediate and certain.

This case also presents unique litigation challenges because the Defendants are based in China.  This fact would significantly increase the complexity and expense of the litigation.  For example, the individual Defendants and most witnesses live in China.  Pls.' Mem., ECF No. 50 at 12.  Much of the evidence exists in China and is written in Chinese.  *Id*.  Further, the Chinese government restricts production of evidence to foreign parties and prohibits taking depositions on the Mainland, forcing any potential depositions to take place in Hong Kong.  *Id.* at 12-13.  All these facts add to what could become a tremendously complex and expensive suit.

As such, this factor weighs in favor of approving the Settlement.

### B.     The Reaction of the Class to the Settlement (2)

The Claims Administrator sent out more than 77,000 postcard notices, more than 1,800 letters, and more than 125,000 emails to potential Settlement Class members.  Pls.' Reply Mem., ECF No. 55 at 2; Supp. Craig Decl., ECF No. 55-1, ¶ 3.  The Administrator also published a

summary notice of the Settlement on *Globe Newswire* and in the *Investor's Business Daily*.  Pls.'

Reply Mem., ECF No. 55 at 2.  Despite these notices and opportunities for notice, no one has

objected yet to the Settlement.  *Id.* at 3; *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir.

2001) ("The vast disparity between the number of potential class members who received notice of

the Settlement and the number of objectors creates a strong presumption that this factor weighs in

favor of the Settlement[.]").  Also, only two people attempted to opt-out.  Pls.' Mem., ECF No. 50

at 21 n.6; Joint Decl. ¶ 43.  Both requests were invalid, and neither person corrected their opt-out.

Pls.' Reply Mem., ECF No. 55 at 5.  Moreover, no class members appeared at the final settlement

hearing on November 29, 2022, to object to the Settlement.  Hearing Tr. 6:23-24.

Therefore, this factor weighs in favor of approving the Settlement.

### C.     The Stage of the Proceedings and the Amount of Discovery Completed (3)

This *Girsh* factor is designed to test "whether counsel had an adequate appreciation of the

merits of the case before negotiating."  *In re Cendant Corp.*, 264 F.3d at 235 (quoting *In re Gen.*

*Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)).  The

relevant question is "whether the plaintiffs have obtained a sufficient understanding of the case to

gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL*

*Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, No. 02-5575, 2006 WL 903236, at *10

(S.D.N.Y. Apr. 6, 2006).

Here, as mentioned, this case is in an early procedural phase, and Defendants have not yet

filed an answer or a dispositive motion.  Formal discovery has not yet begun due to the mandatory

discovery stay under the Private Securities Litigation Reform Act.  Pls.' Mem., ECF No. 50 at 23

n.7.  However, Plaintiffs have extensively studied the merits of the case by conducting

investigations, analyzing SEC filings and analyst reports, reviewing Chinese regulatory filings,

retaining a private investigator in China, interviewing former SOS employees, performing site visits, and consulting with an economics expert on damages. *Id*. at 7. Additionally, the parties participated in mediation by exchanging detailed mediation statements and retaining a mediator, retired federal judge Jose L. Linares, to help negotiate the Settlement. *Id*. at 1, 7.

As such, even though the action is at an early procedural stage, given Plaintiffs' extensive legwork and Judge Linares' services as a mediator, this factor weighs in favor of approving the Settlement.

### D.     The Risks of Establishing Liability (4) and Damages (5)

Courts commonly analyze the fourth and fifth *Girsh* factors together. *Alves v. Main*, No. 01-789, 2012 WL 6043272, at *19 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). These factors are meant to balance the risks of success against settlement's benefits. *Id.*

As to liability, establishing liability is "a common risk of securities litigation." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11. Of course, there is no guarantee Plaintiffs would succeed at any stage of the litigation, let alone all of them. Given that much of the evidence Plaintiffs need is in China, this further complicates Plaintiffs' chances of success.

As to damages, proving damages in securities fraud cases "is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-6689, 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003). A battle of the experts at trial can go either way. *In re Datatec Sys., Inc. Sec. Litig*, No. 04-525, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007). Whereas a trial would amount to a gamble to at least some extent, at a minimum, this Settlement provides certainty.

As such, these factors weigh in favor of approving the Settlement.

### E.       The Risks of Maintaining the Class Action Through Trial (6)

For similar reasons, the sixth *Girsh* factor also militates toward approving the Settlement. Plaintiff would need to maintain class certification throughout the length of the suit, and Defendants could challenge certification and move to decertify at any point.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004).  This adds more expense to the overall cost of the suit, as well as more risk to the Plaintiffs' overall chance of success.  A settlement avoids those issues.

For the same reasons that the risks of establishing liability and damages weigh in favor of settlement, this factor also weighs in favor of approving the Settlement.

### F.       The Ability of the Defendants to Withstand a Greater Judgment (7)

This factor deals with whether Defendants "could withstand a judgment for an amount significantly greater than the Settlement."  *In re Cendant Corp.*, 264 F.3d at 240.  Although the Court does not have access to SOS's financial records, and therefore SOS could theoretically be worth a significant sum, two facts point toward favoring settlement.

First, according to Plaintiffs' brief, SOS does not have any applicable insurance coverage to help cover the cost of any payments.  Pls.' Mem., ECF No. 50 at 1, 12, 17.  Thus, any payments SOS must make—either due to settlement or judgment—must come out of its own pockets.  *Id*. at 17.  Second, in 2021, China banned crypto-mining and cryptocurrency transactions.  *Id.* at 17-18. Given that earlier in 2021, according to the Complaint, SOS "shifted its business focus" to cryptocurrency mining, this adversely affects SOS's business prospects.  Compl., ECF No. 1, ¶¶ 2-3.  This potentially makes it harder for SOS to satisfy any larger monetary judgment on its own.

Given the lack of financial records, this factor is at worst neutral but likely leans more towards approving the Settlement.

### G.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery (8) and All the Attendant Risks of Litigation (9)

Typical settlement recoveries in securities class action cases range from roughly 1.6 to 14 percent.  *In re Cendant Corp.*, 264 F.3d at 241 (citing *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000)).  Courts base those percentages on the amount for which the parties settled against the maximum the plaintiffs requested or could stand to win in a best-case scenario. *See id.*  Here, the class settled for a $5 million settlement out of a possible $76 million that the Plaintiffs' expert predicted as their best-case scenario.  Pls.' Mem., ECF No. 50 at 17.  This amounts to a 6.5 percent recovery rate for the class, which is approximately in the middle of the 1.6 to 14 percent range typically seen in these types of cases.  *Id.* at 18.

Settlement is, of course, a compromise.  *See In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484-85 (D.N.J. 2012).  Here, the attendant risks of this litigation are relatively high.  Defendants have no applicable insurance coverage to assist in satisfying a judgment. Plaintiffs also believe most of Defendants' assets are in China, and China generally does not recognize United States judgments.  Pls.' Mem., ECF No. 50 at 17.  Given these factors in addition to the crypto-related business risks, a 6.5 percent recovery rate appears favorable and fair.  *See Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) (approving a 5.35 percent recovery rate and collecting cases where courts approved securities class action settlements for recovery rates ranging from 1.9 to 19.7 percent and noting that courts have approved smaller recovery rates than that).

As such, the two final factors favor approving the Settlement.

For all these reasons, each of the *Girsh* factors suggests that the Settlement is fair, adequate, and reasonable, and therefore support final approval of the class action Settlement.

## II.    *Prudential* Factors

In addition to the *Girsh* factors, the Third Circuit also advises courts to address any applicable considerations set forth in *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

Here, most of the *Prudential* considerations are immaterial and do not require discussion. It is unnecessary to discuss the maturity of the underlying substantive issues from adjudicating individual actions because no individual lawsuits have been filed against SOS on the same claims. Pls.' Mem., ECF No. 50 at 23 n.7.   The development of scientific knowledge does not need consideration because it is not relevant to the claims of securities fraud.   The extent of discovery on the merits is irrelevant because discovery has not formally begun.   The existence and probable outcome of claims by other classes does not affect this action because there is one Settlement Class, and no other class actions have been filed.   *Id*.   Similarly, there is no need to compare the results achieved by individual class members and other claimants.

Three of the *Prudential* factors, however, are relevant to this action.   The first is whether class members are accorded the right to opt out of the Settlement.   *In re Prudential*, 148 F.3d at 323.   Here, class members were given the option to opt out, but none did before the court-ordered deadline of November 8, 2022.   Pls.' Reply Mem., ECF No. 55 at 1.   The sample notice form filed on the docket, *see* Joint Decl., ECF No. 53-1, Ex. 1, Ex. B, clearly informs class members of their rights to exclude themselves from the class or to object to the Settlement.

The second relevant *Prudential* factor is whether the procedure for processing individual claims under the settlement is fair and reasonable.   *In re Prudential*, 148 F.3d at 323.   The Court recommends a finding that it is.   The claims procedure here is standardized across securities class actions.   Pls.' Mem., ECF No. 50 at 23.   Claims administrators mailed notices to Settlement Class

members, published notice of the Settlement in *Globe Newswire* and *Investor's Business Daily*, and maintained a toll-free phone line and website with information about the Settlement.  Joint Decl., ECF No. 53-1, Ex. 1 at 1-5.  To join the Settlement Class, members were required to provide their mailing address, personal identifying information, and transactions in SOS securities.  Pls.' Mem., ECF No. 50 at 23-24.  It was reasonable for the Claims Administrator to require submission of personal information and proof of transactions to prevent fraudulent claims, and because there is no central repository of the owners of the securities.  *Id.*  Therefore, this factor also supports approving the Settlement.

The third relevant *Prudential* factor is whether provisions for attorneys' fees are reasonable.  *In re Prudential*, 148 F.3d at 323.  As discussed in the following analysis addressing Plaintiffs' Motion for an award of attorneys' fees, the attorneys' fees provisions are reasonable here.

In summary, all three *Prudential* factors relevant to this action also support the Court's recommendation that the Settlement be given final approval.

### III.   Attorneys' Fees, Expenses, and Plaintiffs' Awards

Here, Lead Counsel is seeking an award of $1,666,666.67 in attorney's fees, equal to one third of the Settlement amount, plus reimbursement of $31,361.55 in out-of-pocket litigation expenses, together with interest accrued at the rate earned by the Settlement Fund until paid.  ECF No. 51.  Also, Plaintiffs request that Co-Lead Plaintiffs William Rodgers and Shawn Ho each be awarded $5,000 as reimbursement for expenses and lost time in connection with litigating this action.  *Id.*  The Court recommends that Plaintiff's motion, ECF No. 51, be granted in full.

## A.     Attorneys' Fees for Lead Counsel

Pursuant to Federal Rule of Civil Procedure 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Although the decision to award attorneys' fees and expenses is within the Court's discretion, the Court must review the negotiated award to "protect the class's interest by acting as a fiduciary for the class." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307-08 (3d Cir. 2005).  In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by class counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which class counsel is awarded a certain percentage of the Settlement Amount.  *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).

Where, as here, the Settlement provides for the payment of attorneys' fees from the same source as the pool of settlement funds available to the Settlement Class members, the arrangement "is, for practical purposes, a constructive common fund" that is best analyzed using the percentage-of-recovery methodology.  *Dewey v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014) (quoting *In re General Motors*, 55 F.3d at 820.  In common fund cases, the fees typically awarded to class counsel generally range between 19% to 45% of the Settlement Fund.  *In re General Motors*, 55 F.3d at 822.  Therefore, an award of $1,666,666.67, equating to one-third of the Settlement Fund, is well within the typical range and is reasonable.  Therefore, the Court recommends approval of the award of attorney's fees to Lead Counsel.

## B.     Reimbursement of Litigation Expenses

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015).

Class counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Here, Class Counsel has provided declarations, separated by law firm, outlining the unreimbursed litigation expenses by category. Joint Decl., ECF No. 53, Exs. 2-4. The largest categories of expenses were for mediation fees ($15,000.00), expert and investigator fees ($6,100.00), travel and meal expenses ($4,955.67), and fees related to the press release and notice to class members ($4,304.62). *Id*. Class Counsel also incurred expenses for *pro hac vice* fees, other court and filing fees, process service expenses, and online research and document retrieval fees. *Id*. Class Counsel declares that these expenses are documented in their firms' books and records and were incurred in connection with the prosecution of this action. *Id*. These expenses are similar to types of expenses commonly reimbursed in other securities class action settlements. *See, e.g.*, *In re Ocean Power Techs., Inc.*, No. 14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) (approving reimbursement of litigation expenses including, but not limited to, "the costs of Plaintiff's private investigator, photocopying, postage, messengers, filing fees, travel, long distance telephone, telecopier, mediation fees, and the fees and expenses of Plaintiff's damages expert"). Moreover, the Notice of Pendency and Proposed Settlement of Class Action sent to class members disclosed that class counsel may seek reimbursement of up to $33,000 in litigation expenses, more than the total of $31,361.55 ultimately sought. Joint Decl., ECF No. 53-1, Ex. 1, Ex. B at 1. Still, no class member has objected to the reimbursement. Pls.' Mem., ECF No. 52 at 30.

As such, it is recommended that Lead Counsel's request for reimbursement of out-of-pocket litigation expenses, plus interest, be granted.

### C.      Awards to Co-Lead Plaintiffs

Also, the Court recommends a finding that the $5,000 incentive fees for Co-Lead Plaintiffs William Rodgers and Shawn Ho are reasonable.  Courts may approve incentive awards in class action cases to particular members of the class "to reward the public service performed by lead plaintiffs in contributing to the vitality and enforcement of securities laws."  *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002).  The Co-Lead Plaintiffs participated in this action by, among other things, regularly communicating with counsel about the litigation, producing information to Lead Counsel concerning their investments in SOS, reviewing significant filings, and evaluating and approving the Settlement.  Pls.' Mem., ECF No. 52 at 31.  Also, the $5,000 payment is significantly less than incentive payments approved in other securities class actions.  *See, e.g.*, *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d at 344 (approving an incentive payment of $25,000 to one lead plaintiff); *Kanefsky v. Honeywell Int'l Inc.*, No. 18-15536, 2022 WL 1320827, at *12 (D.N.J. May 3, 2022) (approving awards of $10,000 for both co-lead plaintiffs in a securities fraud class action).  Again, Settlement Class members received notice that Lead Counsel would seek an award for the Co-Lead Plaintiffs not to exceed a total of $10,000, and no objections were received.  Pls.' Mem., ECF No. 52 at 31; Joint Decl., ECF No. 53-1, Ex. 1, Ex. B at 1.  Thus, the Court recommends approval of the incentive awards to the Co-Lead Plaintiffs.

## IV.    Plan of Allocation

The Plan of Allocation provides a detailed overview of how the Settlement proceeds will be divided among Settlement Class members.  Pls.' Mem., ECF No. 50 at 24.  "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable,

and adequate." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D.N.J. 2002) (quotation omitted). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004).

Here, Lead Counsel developed the Plan of Allocation in collaboration with a financial consultant. Pls.' Mem., ECF No. 50 at 25. All Settlement Class members have suffered the same type of injury—the loss in value of their SOS shares—and the Plan of Allocation is based on the extent of each member's loss. The Plan of Allocation provides that the Claims Administrator will determine each claimant's *pro rata* share of the Settlement Fund based upon a claimant's recognized loss, determined by a standard formula. Joint Decl., ECF No. 53-1, Ex. 1, Ex. B at 5-6. The formula is based on the number of SOS shares purchased and the market price at the date of purchase. *Id.* at 6. While a member's recognized loss may not equal a member's actual monetary loss, "a plan of allocation need not be, and cannot be perfect[,]" and "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-7658, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021) (quotation omitted). Again, no class member has filed an objection to the Plan of Allocation. Pls.' Reply Mem., ECF No. 55 at 1, 3-4.

Here, the Plan of Allocation has such a reasonable and rational basis, which is congruent with the type and extent of the Settlement Class members' injuries. Therefore, it is recommended that the Court approve the Plan of Allocation.

## V.     Final Certification of the Settlement Class

Lastly, finalizing the Settlement, the awards of fees and expenses, and the Plan of Allocation requires granting final certification of the Settlement Class. Class certification is

subject to the requirements of Federal Rule of Civil Procedure 23, subsections (a) and (b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).   In determining whether certification is appropriate, this Court may take the Settlement Agreement into consideration.  *See In re Prudential*, 148 F.3d at 308.   In its Preliminary Approval Order, the Court found "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied."  Order, ECF No. 47, ¶ 3.  Because the facts affecting class certification have not materially changed since the Preliminary Approval Order, it is recommended that the Court grant final certification of the Settlement Class.

### A.      Rule 23(a) Elements

In accordance with Federal Rule of Civil Procedure 23(a), class certification is appropriate where a prospective class establishes: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").  *Amchem*, 521 U.S. at 613.  "To obtain class certification, plaintiffs must establish all four elements of Rule 23(a) along with one provision of Rule 23(b)."  *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001).  "All four Rule 23(a) prerequisites for class certification serve as 'guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (quoting *Amchem*, 521 U.S. at 626 n.20).  The Court addresses each of the four Rule 23(a) requirements for class certification in turn.

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  A named plaintiff can generally demonstrate numerosity if "the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.22 (3d ed. 1999)).  Here, the class encompasses significantly more than forty members.  A total of 205,006 notices were sent by mail and email to potential class members, and the Claims Administrator has received 2,117 valid claims.  Supp. Craig Decl., ECF No. 55-1, ¶¶ 3, 9; Pls.' Reply Mem., ECF No. 55 at 3, 6.  Therefore, Rule 23(a)'s numerosity requirement is easily satisfied.

Rule 23(a)(2)'s commonality prerequisite requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  The named plaintiffs must "demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention . . . capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, Co-Lead Plaintiffs have demonstrated that questions of fact and law regarding Defendants' alleged misstatements regarding SOS's business operations are common to the class.  The questions of law or fact common to the Co-Lead Plaintiffs and the Class include: (1) whether Defendants' statements and omissions violated the federal securities laws; (2) whether Defendants acted with the requisite intent when making material misrepresentations or omissions; (3) whether SOS's SEC filings, press releases, and other market communications were materially false and/or misleading; and (4) whether investors suffered damages when the artificial inflation in the price of SOS securities,

created or maintained by Defendants' false statements and/or omissions, was eliminated.  *See* Compl., ECF No. 1, ¶¶ 24-49.  The commonality requirement is satisfied.

Rule 23(a)(3)'s typicality requirement demands that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3). The typicality requirement is satisfied "where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotation omitted).  Here, both Co-Lead Plaintiffs are alleged to have been damaged by the acquisition of SOS securities at prices that were artificially inflated.  *See* Motions to Appoint Lead Plaintiff, ECF Nos. 5, 6.  The claims are typical of the Settlement Class because the claims arise from the same course of conduct that gave rise to the claims of all other Class Members and are based on the same legal theory. Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

First, as to the adequacy of class representatives under Rule 23(a)(4), a "class representative must represent a class capably and diligently.  [A] minimal degree of knowledge about the litigation is adequate."  *In re NFL Players Litig.*, 821 F.3d at 430 (internal quotations and citations omitted).  Here, Co-Lead Plaintiffs Shawn Ho and William Rodgers are investors who, like the other class members, allegedly purchased SOS securities at artificially inflated prices. Plaintiffs assert that the Co-Lead Plaintiffs "were available to Lead Counsel as needed and performed their duties with attentiveness and diligence."  Pls.' Mem., ECF No. 52 at 31.  It appears that Co-Lead Plaintiffs have demonstrated their ability to serve as class representatives by regularly communicating with counsel, gathering and producing information about their SOS investments, evaluating and approving the Settlement, and making themselves available to be

deposed if needed, among other activities.  *Id.*  All this indicates that the Co-Lead Plaintiffs adequately represented the class.

Second, this Court must weigh three criteria: whether class counsel "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re General Motors*, 55 F.3d at 801.  After reviewing the Declarations and submissions of Lead Counsel, the Court finds that Lead Counsel (i) have performed substantial work in investigating and prosecuting the claims in this litigation; (ii) are experienced in handling complex litigation and securities claims; (iii) have extensive knowledge of the applicable laws; (iv) have devoted considerable time and resources to this litigation; and (v) have adequately negotiated at arm's length from Defendants.[5]  Accordingly, the Rule 23(a)(4) adequacy in representation requirement is satisfied.

### B.      Rule 23(b)(3) Elements

In addition to satisfying the four Rule 23(a) prerequisites, the parties must also demonstrate that the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc.*, 564 U.S. at 345.  Here, Plaintiffs rely on Rule 23(b)(3), which applies when (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

The first inquiry—the "predominance inquiry"—tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by

---

[5]  The statements made by counsel for Plaintiffs and Defendants at the settlement hearing held on November 29, 2022 suggest that the Settlement was achieved through hard-fought, adversarial negotiation, particularly at the mediation overseen by the retired Hon. Jose L. Linares. Hearing Tr. 6:3-22.

the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).  Here, the Settlement Class's claims depend on the same factual circumstances.  Plaintiffs allege that Defendants' course of conduct artificially inflated the prices of SOS securities, and that when the truth regarding SOS's supposed transition into cryptocurrency mining was revealed though securities research reports beginning on February 26, 2021, the price of SOS securities fell, and the class members were damaged.  Compl., ECF No. 1, ¶¶ 41-49; s*ee In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (discussing how common issues predominate where the "'the inquiry necessarily focuses on defendants' conduct'" (quotation omitted)).  The Class's claims depend on proof of common legal issues because SOS securities allegedly traded in an efficient market during the Class Period.  Compl., ECF No. 1, ¶ 58.

The second inquiry—the "superiority inquiry"—"asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 409 (3d Cir. 2015) (quotation omitted).  The Court recommends a finding that the Settlement is superior to continued litigation after considering the costs of additional motion practice, the difficulties of gathering evidence for trial, the terms of the Settlement, the size of the alleged loss, and the potential difficulties of enforcing a larger judgment.  *See In re General Motors*, 55 F.3d at 796 (discussing the superiority requirement in the settlement context).  Thus, having found that the elements of Rules 23(a) and 23(b)(3) are satisfied, the Court recommends final certification of the Settlement Class.

**<u>ORDER</u>**

**IT IS** this **3rd** day of **January 2023**;

**RECOMMENDED** that Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 49, be granted; and it is further

**RECOMMENDED** that Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs, ECF No. 51, be granted; and it is further

**RECOMMENDED** that Plaintiffs' Plan of Allocation be approved; and it is further

**RECOMMENDED** that this action be finally certified as a class action for purposes of Settlement; and it is further

**ORDERED** that the parties have fourteen (14) days to file any objections to this Report and Recommendation pursuant to Local Civil Rule 72.1(c)(2).


        <u>s/Elizabeth A. Pascal</u>
        ELIZABETH A. PASCAL
        United States Magistrate Judge


cc: Hon. Robert B. Kugler, U.S.D.J.